**PRO–MOLD AND TOOL COMPANY, INC., Plaintiff–Appellant,**

v.

**GREAT LAKES PLASTICS, INC., Defendant/Cross–Appellant.**

Nos. 95–1171, 95–1181.

United States Court of Appeals, Federal Circuit.

Feb. 7, 1996.

Thomas F. Zych, Thompson, Hine & Flory, Cleveland, Ohio, argued for plaintiff-appellant. With him on the brief were Mark Levy and Brian J. O'Connell, Thompson, Hine & Flory, Dayton, Ohio, of counsel.

Marshall Bennett, Jr., Marshall & Mulhorn, Toledo, Ohio, argued for defendant/cross-appellant. With him on the brief was D. Edward Dolgorukov.

Before PLAGER, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Pro–Mold and Tool Company, Inc. appeals from the summary judgment of the United States District Court for the Northern District of Ohio holding U.S. Patent 5,224,600 invalid under 35 U.S.C. § 103 and dismissing its patent infringement claim. Great Lakes Plastics, Inc. cross-appeals from the district court's judgment dismissing its counterclaim for unfair competition. *Pro–Mold and Tool Co. v. Great Lakes Plastics, Inc.*, No. 3:93 CV 7412 (N.D.Ohio Sept. 12, 1994). Because the district court erred in holding that there were no genuine issues of material fact regarding nonobviousness of the subject matter of the patent, we vacate the district court's judgment holding the patent invalid and re-

mand. Because the district court did not err in determining that there was a lack of evidence to support Great Lakes' counterclaim for unfair competition, we affirm the district court's judgment dismissing that counterclaim.

BACKGROUND

The patent in suit describes a card holder for storing baseball and other sports trading cards. The card holder consists of a base and cover. Figures 1 and 2 illustrate top and side sectional views, respectively, of the base, and Figure 3 illustrates a side view of the cover:

The base 12 forms a frictional fit with the cover 14; it contains a lip 22 extending around surface 20, which forms a pocket 30 for receiving a card 18. The cover 14 contains a slightly smaller plate 44, which forms a side surface 52. The base 12 and cover 14 fit together such that the lip 22 frictionally engages the plate 44 along side surface 52. The lip 22 and side surface 52 are each slightly tapered to form the friction fit. Claim 1, the only independent claim, reads as follows:

1. A card holder for displaying a card having a thickness and a face of a predetermined area, the card holder consisting essentially of:

a transparent rectangular base having a first perimeter and a lip extending along the first perimeter, said lip projecting approximately perpendicularly from and bounding a flat first surface, whereby said lip and said first surface form a rectangular pocket for receiving the card, the length and width of said lip being only slightly larger than the length and width of said card; and

a transparent rectangular cover having a second perimeter approximately equal to said first perimeter, said cover including a transparent rectangular plate centrally located therein, said plate having a thickness, a third perimeter less than said second perimeter and a flat rectangular second surface bounded by said third perimeter, said cover further having a peripheral surface bounded by said second and said third perimeters, whereby upon said base and said cover being assembled, said lip receives and frictionally engages said plate, and said lip contacts said peripheral surface of said cover thereby establishing a separation between said first and second surfaces slightly greater than the thickness of said card, the length and width of said cover being the same as the length and width of said base.

According to testimony in the record, the inventor, Edward J. Neugebauer, Sr., designed the patented card holder to be only slightly larger than a stored card. The idea for this sized card holder resulted from conversations that he had with his son, Edward Neugebauer, Jr., who was a sports card collector and was familiar with the sports card market and industry. Neugebauer, Jr. stored his cards in numerical order using a conventional set storage box. However, he stored his more valuable cards in individual card holders. These individual card holders did not fit in the set storage box, and Neugebauer, Jr. thus taped them to the top of the box in order to store the cards with their set. Seeing the individual card holders taped to

the storage box prompted Neugebauer, Sr. to ask his son if there was a card holder on the market that fit in a storage box. His son replied that he did not think so. This led Neugebauer, Sr. to design a card holder that was only slightly larger than the stored card so that it would fit in a conventional set storage box. It could therefore be stored in the storage box with cards that were not in individual card holders, providing the advantage of allowing sports card collectors to keep their sets together in a set storage box.[1]

Great Lakes has made several different card holders since it was formed in 1991. One of these, the Mini Tite card holder, is a two-piece card holder with a friction fit cover; it is only slightly larger than a card. While it is not clear from the district court's opinion which Great Lakes product Pro–Mold believed infringed the patent, the district court assumed that the Mini Tite card holder was the accused infringing product; no one has disputed this assumption.

Pro–Mold sued Great Lakes for infringement of the patent.[2] Great Lakes counterclaimed for unfair competition, alleging that Pro–Mold acted in bad faith by filing its lawsuit knowing that the patent was invalid because of inequitable conduct. On summary judgment, the district court held that: (1) the patent was invalid under 35 U.S.C. § 103 as having been obvious over the prior art Classic Line Thin card holder and Great Lakes Squeeze Tite card holder; and (2) there was insufficient evidence of bad faith by Pro–Mold in filing its patent infringement lawsuit because Pro–Mold and Neugebauer, Sr. did not engage in inequitable conduct in the procurement of the patent. Accordingly, the district court dismissed both Pro–Mold's patent infringement claim and Great Lakes' unfair competition counterclaim. Each party appeals from the dismissal of its claim.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material

1. This feature is defined in dependent claim 12 of the '600 patent: "12. The card holder of claim 4 wherein said card holder is dimensioned such that said card holder can be stacked in planar parallel relationship with a plurality of said cards not contained in card holders and stored with said cards in a conventional set storage box."

2. The inventor previously assigned his rights in the '600 patent to Pro–Mold.

fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir. 1989). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir. 1995). We review *de novo* a district court's grant of summary judgment. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).

### A. *Obviousness*

Pro–Mold argues that there was no suggestion to combine the prior art Squeeze Tite and Classic Line Thin card holders. Pro–Mold also contends that the district court erred by not considering evidence of secondary considerations in its obviousness analysis.

Great Lakes counters that the district court did not err in holding the claimed invention to have been obvious over the prior art card holders. Great Lakes argues that the district court considered the evidence of secondary considerations offered by Pro–Mold and that this evidence did not create genuine issues of material fact precluding summary judgment.

■■■ A determination of obviousness under 35 U.S.C. § 103 is a legal conclusion involving factual inquiries. *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1050, 5 USPQ2d 1434, 1438 (Fed.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Among these factual inquiries are secondary considerations, which include evidence of factors tending to show nonobviousness, such as commercial success of the invention, satisfying a long-felt need, failure of others to find a solution to the problem at hand, and copying of the invention by others. *Id.; Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566, 1 USPQ2d 1593, 1595

(Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987).

■■■ The district court held that there were no genuine issues of material fact pertaining to the obviousness of the invention. The district court determined that the content of the prior art included the Squeeze Tite card holder and Classic Line Thick and Thin card holders. The Squeeze Tite card holder is a two-piece card holder with a friction fit cover. It is larger than the card and thus provides a "frame" around a stored card. The Classic Line card holders are only slightly larger than the stored card and consist of a base and slide cover. The cover fits into the base by sliding into grooves in the "long" sides of the base. The Classic Line Thick card holder was designed to hold several cards, while the Classic Line thin card holder was designed to hold one card. The district court combined the size of the Classic Line Thin card holder with the friction fit cover of the Squeeze Tite card holder, and held this combination of features to have been obvious to a person of ordinary skill in the art of the design and manufacture of card holders. The district court, however, did not provide a basis for its discounting of Pro–Mold's evidence of secondary considerations.

We agree with the district court that the Classic Line Thin and Squeeze Tite card holders together contain all the elements of the invention defined in independent claim 1 of the patent. The Squeeze Tite card holder contains all the elements of the invention except for its size. The Classic Line Thin card holder provided this missing element, being only slightly larger than a stored card.

Pro–Mold, however, argues that the district court erred in concluding that the Classic Line card holders were prior art to the patent. *See* 35 U.S.C. § 102 (1988). The district court considered relevant publications advertising the Classic Line Thin card holder and corroborating deposition testimony. Because the Classic Line Thin card holder was advertised in 1988, 1989, and 1990, we conclude that the district court did not err in determining that there is no genuine dispute as to whether the prior art included the Classic Line Thin card holder.

Pro–Mold also argues that there was no reason to combine the Squeeze Tite and Classic Line Thin prior art products. We disagree. It is well-established that before a conclusion of obviousness may be made based on a combination of references, there must have been a reason, suggestion, or motivation to lead an inventor to combine those references. *ACS Hosp. Sys., Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577, 221 USPQ 929, 933. We start from the self-evident proposition that mankind, in particular, inventors, strive to improve that which already exists. Section 103 sets the dividing line between patentability and unpatentability at what would have been obvious to one having ordinary skill in the art to which the invention pertains. If one prior art reference describes the claimed invention, it is worse than obvious in terms of patentability; it lacks novelty. If the invention is different from what is disclosed in one reference, but the differences are such that combination with another reference would lead to what is claimed, the obviousness question then requires inquiry into whether there is reason, suggestion, or motivation to make that combination.

Such a suggestion may come expressly from the references themselves. *See, e.g., In re Sernaker*, 702 F.2d 989, 994, 217 USPQ 1, 5 (Fed.Cir.1983). It may come from knowledge of those skilled in the art that certain references, or disclosures in the references, are known to be of special interest or importance in the particular field. *Cf. Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 297 n. 24, 227 USPQ 657, 667 n. 24 (Fed.Cir.1985) (stating that the knowledge of one skilled in the art may provide the "teaching, suggestion, or inference" to combine references), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). It may also come from the nature of a problem to be solved, leading inventors to look to references relating to possible solutions to that problem. *See, e.g., Application of Rinehart*, 531 F.2d 1048, 1054, 189 USPQ 143, 149 (C.C.P.A.1976) (considering the problem to be solved in a determination of obviousness).

In this case, the reason to combine arose from the very nature of the subject matter involved, the size of the card intended to be enclosed. There was surely a reason to combine a reference describing an elegant card holder and cover arrangement with a reference describing a card holder no larger than necessary to enclose the card. The suggestion or motivation to combine these features of the prior art was thus evident from the very size of the card itself. Card holders larger than the card had already been designed, as evidenced at least by the Squeeze Tite card holder. On the other hand, a card holder no larger than necessary clearly was desirable in order to enable the card holders to fit in a set box. It would also avoid having the cards bang around in a holder larger than needed. Accordingly, the size of the card provided the motivation to combine the features of the prior art card holders and hence modify the size of the Squeeze Tite card holder so that it was not larger or smaller than the card, but rather substantially the size of the card.

Pro–Mold's evidence of commercial success, however, created genuine issues of material fact precluding summary judgment. In particular, there were genuine issues of material fact as to whether there was a nexus between the commercial success of the invention and its patented features. It is the secondary considerations that are often most probative and determinative of the ultimate conclusion of obviousness or nonobviousness. The district court did not provide reasons for apparently discounting Pro–Mold's evidence of secondary considerations; that was error as a matter of law.

In reviewing a decision on summary judgment, we must draw inferences in favor of Pro–Mold, the nonmovant. *See Transmatic*, 53 F.3d at 1274, 35 USPQ2d at 1038. Pro–Mold submitted evidence of commercial success to prove nonobviousness of the invention. Pro–Mold argues that the success of the patented card holder was due to the features of a friction fit cover and a size that allowed it to fit within a set storage box. It has sold approximately 3.2 million of the card holders between June 1992 and the issuance of the patent in July 1993. Neugebauer, Sr.'s deposition testimony provided support for a nexus between these sales and the

claimed invention. He testified that Pro–Mold is a tool and die company that designs and builds plastic injection molds. It did not market any plastic products other than card holders, and it first started manufacturing a card holder in October 1991. Pro–Mold's lack of previous experience in the relevant market combined with its high sales of the patented product provided an inference of a nexus between its commercial success and the patented invention and are thus probative evidence of nonobviousness. Its lack of market power in this field would seem to suggest that it was the features of the patented invention that led to the commercial success.

Pro–Mold also submitted affidavits from fourteen distributors of sports cards and card holders. The affidavits stated that the patented card holder "has been extremely popular with our customers, and began selling rapidly and in large quantities as soon as it was introduced to the market." While these may have been "form" affidavits, as asserted by Great Lakes and the district court, they were still evidence of nonobviousness which must be considered. It is within the province of the fact-finder to resolve these factual disputes regarding whether a nexus exists between the commercial success of the product and its patented features, and to determine the probative value of Pro–Mold's evidence of secondary considerations for rebutting the *prima facie* case of obviousness. Pro–Mold also submitted evidence of industry acceptance and copying by others as secondary considerations. In particular, Pro–Mold licensed the patent to three of the major competitors in the market. In addition, Neugebauer, Sr. testified in his deposition that he believed several other companies copied his invention. Since we hold that genuine issues of material fact exist regarding the commercial success of invention, we need not decide whether such factual issues exist with respect to these other secondary considerations. On remand, the district court will consider all asserted secondary considerations. Drawing all inferences in favor of Pro–Mold, we accordingly must vacate the grant of summary judgment of invalidity.

### B. *Unfair Competition*

Great Lakes argues that Pro–Mold engaged in unfair competition in its bad faith filing of a complaint knowing that the patent was unenforceable. Great Lakes alleges that the patent is unenforceable due to Pro–Mold's not disclosing to the United States Patent and Trademark Office (PTO) a prior art Top Loader card holder and not disclosing that Neugebauer, Jr. was a joint inventor.

Pro–Mold counters on appeal that it is shielded by the *Noerr–Pennington* doctrine. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 26 USPQ2d 1641 (1993); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). In addition, Pro–Mold argues that it did not engage in inequitable conduct, because the Top Loader card holder was not material prior art and thus need not have been submitted to the PTO; it also argues that Neugebauer, Jr. did not make an inventive contribution to the invention.

When considering issues which are not unique to our jurisdiction we defer to the law of the regional circuit. *See U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 702, 8 USPQ2d 1885, 1890 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989). When the issues involve substantive questions within our exclusive jurisdiction, however, we do not defer to the regional circuit. *See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953, 15 USPQ2d 1469, 1470 (Fed.Cir. 1990) (procedural matters involving substantive patent law issues). While unfair competition is not unique to our jurisdiction, a question concerning whether alleged inequitable conduct in the prosecution of a patent application constitutes unfair competition clearly does impact our exclusive jurisdiction. We therefore do not defer to regional circuit law on this issue.

Great Lakes asserted in the district court that Pro–Mold engaged in unfair competition, not specifying whether it was raising a feder-

al or state claim. The district court decided that no federal unfair competition claim was established because Pro–Mold did not act in bad faith by suing under its patent.

We affirm the district court's holding on this issue. First, we do not consider Pro–Mold's *Noerr–Pennington* defense since it was neither raised nor decided by the district court. However, Pro–Mold prevails on the unfair competition issue anyway.

The basis for Great Lakes' assertion of unfair competition was inequitable conduct. However, there is no legal basis for a holding that inequitable conduct, or the assertion of a patent procured through inequitable conduct, constitutes unfair competition. In order to successfully assert a violation of federal law, a party must cite a specific statutory provision that he claims has been violated and prove that violation. Great Lakes has not done so here. The only basis for a federal unfair competition claim is Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1) (1994). That provision prohibits false designations of origin or false or misleading descriptions of goods or services which are likely to cause confusion. Obtaining a patent through inequitable conduct does not violate this statute.

The established remedy for inequitable conduct is unenforceability of the patent. If a trial court considers that the case is an exceptional one, which is often found when the patent has been improperly procured, attorney fees can be awarded. Moreover, the Supreme Court has held that "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174, 86 S.Ct. 347, 349, 15 L.Ed.2d 247, 147 USPQ 404, 406 (1965). Thus, there are adequate remedies to deal with inequitable conduct when it is found. Resort to federal unfair competition law is not one of them.

In any event, we agree with the district court that there was no inequitable conduct in this case. We review such a holding on an abuse of discretion standard.

Inequitable conduct consists of an "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1826 (Fed.Cir.1995). "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Id.* at 1179, 33 USPQ2d at 1827 (citing *In re Jerabek*, 789 F.2d 886, 890, 229 USPQ 530, 533 (Fed.Cir.1986)).

The district court held that Neugebauer, Jr. was not a joint inventor, stating "there is no evidence that Neugebauer Jr. suggested any means of accomplishing the construction of the card holder; he merely provided input as Neugebauer Sr. was deciding the features of the card holder he would make." We conclude that the district court did not abuse its discretion in determining that no inequitable conduct occurred in Neugebauer, Jr.'s being omitted as a co-inventor.

There was no evidence of any intent by Neugebauer, Sr. to mislead the PTO by not identifying his son, Neugebauer, Jr., as a joint inventor. To be a joint inventor, one must contribute to the conception of an invention. *See Sewall v. Walters*, 21 F.3d 411, 415, 30 USPQ2d 1356, 1358–59 (Fed.Cir. 1994); 35 U.S.C. § 116 (1988). "Conception exists when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is known." *Id.* (citing *Coleman v. Dines*, 754 F.2d 353, 359, 224 USPQ 857, 862 (Fed.Cir.1985)). "An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1228, 32 USPQ2d 1915, 1919 (Fed.Cir. 1994).

As support for its allegation of joint inventorship, Great Lakes cites the following deposition testimony of Neugebauer, Jr., in which he testified regarding his relevant con-

versations with his father and his contribution to the invention:

Q. How about the first conversation? If that hadn't taken place?

A. Like I said, I don't think it would have gone, if I hadn't planted the seed and mentioned to my father: Why don't you make a card holder, I don't think—in that respect, yes, I guess you could say yes, I did, if that's what you are talking about.

Q. In fact, you were involved from the planting of the seed at the first conversation through the second conversation where the both of you saw Deposition Exhibits 5 [Top Loader card holder] and 10 [Squeeze Tite card holder] and through the one-half hour to two hour conversation where the final form of the invention took place; isn't that right? You were involved in the whole process?

A. Yes.

According to his deposition testimony, Neugebauer, Jr. recognized that his contribution to the invention included identifying for his father what was available in the sports card holder market:

Q. In your opinion, did you contribute something to the invention throughout these discussions? Was it shaped as a result of these discussions? In other words, do you feel the final invention has some of your input in it?

A. I wouldn't say input. I just gave him [Neugebauer, Sr.] an idea of what was available on the market at that time and that possibly there was a, you know—he was right and he should make it the same size as the card.

The evidence indicates that Neugebauer, Sr.'s discussions with his son were intended to elicit information regarding the sports card holder industry. While Neugebauer, Jr. may have suggested or, as he stated, "planted the seed," for the invention, even if this suggestion could have been a sufficient contribution for him to have been a joint inventor, there was no evidence that omitting Neugebauer, Jr. as an inventor was due to an intent to deceive the PTO concerning any matter material to patentability. An error in determining inventorship is not by itself inequitable conduct.

Furthermore, Neugebauer, Jr. admitted in his deposition that his father contributed the critical size feature of the invention:

Q. Now, let's go back to the conversation right before that. Did you contribute at all to the idea of making it so it would fit in the set box or was that all his idea or just how did that come about?

A. Well, I would like to take credit for it too, but I have to admit that he [Neugebauer, Sr.] was the one who said: Let's make one that fits in the box. But had I not planted the seed a month or two earlier to make the card holder in general, I don't think it would have ever come about.

Neugebauer, Jr. also admitted in his deposition that the invention would have been made without his contribution:

Q. Let me state the question again. Referring to Deposition Exhibit 9 [patented card holder], did you feel that as a result of these discussions, these three discussion we have talked about, and that half hour to two hour give-and-take session, that there is something that ended up in that invention which was your thought and without that thought the invention would have been something less?

A. Let me just say if the conversation didn't take place, I think it still would have came out the same way it did.

Although Neugebauer, Jr. was thus "involved" in the invention development process, as alleged by Great Lakes, he agreed that it was his father who conceived the idea of making a card holder substantially the size of a card so that it would fit in a conventional set storage box. When an alleged omitted co-inventor does not claim to be such, it can hardly be inequitable conduct not to identify that person to the PTO as an inventor. Accordingly, the district court did not abuse its discretion in concluding that Neugebauer, Sr. did not engage in inequitable conduct by not identifying Neugebauer, Jr. as a joint inventor.

The district court also held that Neugebauer, Sr. did not engage in inequitable conduct in failing to submit the prior art Top Loader card holder to the PTO. The

Top Loader card holder is a flexible plastic sleeve with an opening on one end for receiving a card. It has substantially the same width as a sports card. The district court determined that the Top Loader card holder was not material prior art because it was not a rigid plastic case like the claimed invention and therefore was less pertinent than the prior art of which the examiner was aware.

We agree with the district court. The Top Loader card holder was less relevant than the prior art which the inventor submitted to the PTO. The Great Lakes Squeeze Tite card holder, while larger than a sports card, consisted of a base and the same type of friction fit cover as the card holder claimed in the patent.

The Top Loader, on the other hand, was a one-piece flexible plastic sleeve; as the inventor recognized, it did not fit into a set storage box because the "sleeve" extended too far beyond the end of the stored card. It thus lacked both the size and the structural features of the prior art available to the examiner. Accordingly, the Top Loader card holder was less relevant than the other prior art, and the district court did not abuse its discretion in concluding that Neugebauer, Sr. did not engage in inequitable conduct by failing to submit it the PTO. Moreover, there was no evidence of an intent to deceive the PTO.

We therefore conclude that the district court did not abuse its discretion in determining that Pro–Mold and Neugebauer, Sr. did not engage in inequitable conduct, which was the basis for Great Lakes' allegation of unfair competition by Pro–Mold in filing its patent infringement action.

## CONCLUSION

We affirm the district court's judgment dismissing Great Lakes' counterclaim for unfair competition. We vacate the district court's judgment holding the patent invalid for obviousness and remand for further proceedings consistent with this opinion.

## COSTS

Costs to Pro–Mold.

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.*