58 CCPA
**Application of Charles C. COHN.**
**Patent Appeal No. 8357.**

United States Court of Customs
and Patent Appeals.
March 18, 1971.

Busser, Smith & Harding, Philadelphia, Pa., attorneys of record, for appellant. George A. Smith, Philadelphia, Pa., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Leroy B. Randall, Bethesda, Md., of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejections of appellant's claim 12 [1] under 35 U.S.C. 103 as obvious in view of prior art and of claims 12–14 as failing to comply with 35 U.S.C. 112, second paragraph.

## THE INVENTION

The claims before us are directed to a method of producing non-metallic appearing finishes on aluminum surfaces. The specification details specific methods whereby various finishes may be obtained, "categorized according to their appearance as being frosted, opaque or glazed." In general, the methods comprise the three steps of forming an aluminum oxide layer on a precleaned aluminum surface (anodizing), sealing that oxide layer with a selected sealant, and corroding the sealed surface under controlled conditions in order to produce a non-metallic appearing surface. The particular finish resulting—frosted, opaque, or glazed, porcelain-like—is a function of the particular sealant employed and, in the case of the "frosted" finish, the addition of an etching step subsequent to the cleaning of the surface. Claim 12 is illustrative of the particular method claimed:

> 12. The method of producing on a surface of aluminum a durable opaque finish comprising the steps of providing on the surface of the aluminum a porous oxide coating, then sealing said coating by treatment with a solution of an alkali silicate, and then treating the sealed surface with a corroding solution until the metallic appearance of the surface is supplanted by an opaque appearance.

Claim 13 is similar with caustic alkali specified as the corroding solution, while claim 14 adds an additional resealing step.

## THE SECTION 112 REJECTION

The issue we find determinative in this appeal is the correctness of the rejection of claims 12–14 as not satisfying the requirements of 35 U.S.C. 112. The examiner stated that he regarded those claims as "unduly broad and indefinite in failing to define the minimum time and temperature relationship of the corrosion treatment." He further thought that expressing the time period of the corrosion treatment in terms of obtaining the desired result of producing some "subjective", "relative and indefinite appearance", viz. an "opaque appearance", was particularly meaningless and indefinite, inasmuch as appellant, in his view, had not satisfactorily defined what constitutes a "metallic" appearance or an "opaque" appearance.

The board sustained the rejection "for the reasons given by the examiner," adding:

> We feel impelled also to comment that while the specification * * * lists as one essential step the formation of an aluminum oxide layer, no claim requires such a step. The oxide layer

1. *Appearing in application serial No. 281,049, filed May 16, 1963 for "Methods of Producing Opaque Surfaces on Aluminum,"* as a continuation-in-part of serial No. 836,056, filed August 26, 1959.

called for by the claims could be an oxide of any metal or non-metal e. g., lead, iron, phosphorus, etc., which further points up the essential correctness of the Examiner's position.

Turning first to the above-quoted criticism of the board concerning the failure of the claims to recite that a porous *aluminum* oxide is formed on the aluminum surface, we agree with appellant that express inclusion of "aluminum" as a modifier of "oxide coating" is not necessary in the present circumstances. The evidence of record, notably the Tosterud[2] and Edwards[3] patents cited in support of the prior art rejection, amply establishes that the term "oxide coating", as it is employed in the claim, connotes an aluminum oxide coating to those in this art.[4]

The criticisms of the examiner, however, require further and deeper consideration. We have determined that while some of the points he raised are not sustainable, we are in agreement that the claims fail to define the subject matter sought to be patented with the particularity and distinctness required by the second paragraph of 35 U.S.C. 112.

In direct response to the rejection as framed by the examiner, appellant argues in his brief before us that his specification makes it clear that a wide variety of corrodants may be utilized in the "corrosion treatment" step of his process, and that the time and temperatures employed in that step may vary widely depending on the particular corrodant selected and its concentration. His position is that the broad claim language he has selected delineates clearly the full scope of his invention and is permitted by the third paragraph of 35 U.S.C. 112, which provides in pertinent part:

> An element in a claim for a combination may be expressed as a * * * step for performing a specified function without the recital of * * * material, or acts in support thereof, and such claim shall be construed to cover the corresponding * * * material, or acts described in the specification and equivalents thereof.

It is true that claim language which expresses performing particular steps until a given result or state is reached, or a given condition obtained, *may* be proper under § 112, third paragraph. This is with the proviso, however, that the claim otherwise satisfies the requirements of the first and second paragraphs of § 112. See In re Lundberg, 244 F.2d 543, 44 CCPA 909 (1957); In re Arbeit, 206 F.2d 947, 41 CCPA 719 (1953). We might find appellant's arguments to be convincing if the sole issue were whether the instant claims were adequately supported under the requirements of the first paragraph. However, we cannot even reach that issue since we are not satisfied that these claims comply with the second paragraph of § 112. Specifically, we are not sure that interested parties would be able to determine with adequate precision just what is the "opaque appearance" which indicates completion of the "corrosion treatment" step.

Initially, one might well wonder, as did the examiner, what distinction there is between a "metallic appearance" of a surface and an "opaque appearance" of that surface, particularly since metallic

2. U. S. Patent 1,946,150, issued February 6, 1934.

3. U. S. Patent 1,946,153, issued February 6, 1934.

4. Tosterud states:
   The term "oxide coating" as used herein is a well known designation in the art to describe a layer of aluminum oxide artificially produced on the aluminum surface by chemical treatment, with or without the use of externally applied electrical energy, but the term does not include the thin film of aluminum oxide which is naturally formed upon the metal by contact with the air.
   Similarly, Edwards states:
   By various known processes aluminum surfaces may be provided with what is generally termed an "oxide coating". Such a coating is composed in large part of aluminum oxide. * * *

surfaces themselves are "opaque" at least in the usual sense of being non-transparent. In an affidavit filed below, the tenor of which is paraphrased in part in his brief here, appellant explains the intended significance of those terms:

It is not possible to properly cover the full scope of the invention if any time-temperature relationship of the corrosion treatment is defined in the claims, since these parameters vary widely depending upon the corrosion agent employed, its concentration, temperature, etc. On the other hand, those skilled in the art of finishing aluminum would readily recognize when the metallic appearance of the surface being treated with a corroding solution is supplanted by an opaque appearance. The significance of "opaque appearance" being simply that the metallic appearing surface can no longer be seen which is readily evident by observation. A metallic appearance is readily recognized by those skilled in this art and is believed to be a clear term on its face.

When we turn to appellant's specification as permitted by the third paragraph of § 112, however, the matter does not appear so clear-cut or straight forward. The specification states:

* * * the three steps set forth hereinabove ["forming" an oxide layer, "sealing" and "corroding"] produce a finish which is best described as being non-metallic and opaque but having a certain degree of luster. On the other hand, the above steps when combined with an etching step have been found to produce what may be described as a non-metallic, frosted finish which lacks the luster of the opaque finish. Thirdly, a highly glazed or porcelain-like finish is also contemplated and it is to be understood that the production of this type of finish is dependent upon the particular sealant which is employed in the second step as will be described more fully hereinafter. * * *

After describing the particular oxide-forming techniques and explaining that various sealants may be employed, including alkali metal silicates as well as certain acetates, the specification goes on to state:

* * * the anodized and sealed surface produced by the above indicated steps presents a metallic appearing surface which is either highly reflective or slightly frosted in appearance depending upon whether the pre-treatment included polishing or etching. However, during the corroding step, this finish is made opaque by the controlled corroding of the sealed coat. In the case of an aluminum alloy containing magnesium such as alloy No. 5357, this corroding tends to whiten the surface so as to create an opaque or glazed surface depending upon the particular sealant which is used as will be defined hereinafter. * * *

Appellant then describes the factors governing the choice of sealants:

The second factor in determining the choice of seals and corrodents is governed by the particular type of finish which is desired. In this regard, it has already been pointed out that the types of finishes may be categorized according to their appearance as being frosted, opaque or glazed. In order to achieve the latter type, i. e. the glazed or porcelain-like finish, a silicate seal must be selected as the first sealant since the presence of silicon oxide is required for the formation of the glazed appearance. * * * In order to produce the frosted finish, the pre-treatment must include the etching step previously described although the type of seal which follows this step is not critical. Thus, the corrodent may be any of the previously mentioned corrodents provided that it is consistent with the selected type of seal having in mind the rules set forth as comprising the first factor of selection. Lastly, an opaque finish is achieved if the pre-treatment does not include an etching step and if the seal is other than a silicate seal.

Thus, each of the above listed sealants may be considered as producing similar finishes insofar as the latter fall within the opaque classification.

In Example 1, appellant employs sodium silicate as a sealant to produce what he variously describes as a "whitened surface" or a "highly glazed finish, *i. e.*, the enamel-like or porcelain-like finish having a white coloring." In Example 2, appellant employs nickel acetate as a sealant to produce an "opaque finish" not "quite as glossy" as the finish produced in Example 1, and appearing as a "flat paint rather than an 'enamel or porcelain" finish. In Example 3, a "frosted" finish is produced which is "neither porcelain-like or opaque as these terms have been defined hereinabove," and which is "not glossy" and does not have "the flatness of the opaque finish." Appellant's brief here asserts that Examples 1 and 3 "support all of the claims on appeal."

█ It is evident to us from the above summary of the description, definitions and examples appearing in appellant's specification, that the claims on appeal are inherently inconsistent. As used and defined in the specification, and unmodified by other terminology, an "opaque finish" is a flat-appearing finish which is *not* obtained when an alkali metal silicate is used as a sealant. Indeed, the latter sealant is said to produce a glazed or porcelain-like finish [5] having a white coloring. The claims, on the other hand, specifically call for sealing the oxide surface with an alkali silicate in order to ultimately obtain an "opaque appearance." No claim may be

read apart from and independent of the supporting disclosure on which it is based. We are thus required to read the claims in light of the disclosure and in that light the term "opaque finish" as it appears in the preamble of each claim must take on the meaning ascribed to it in that disclosure. The result is an inexplicable inconsistency within each claim requiring that the rejection under 35 U.S.C. 112 on grounds of indefiniteness be sustained. We will not, therefore, discuss the other issues in the case.

The decision of the Board of Appeals is *affirmed*.

Affirmed.

58 CCPA

---

5. It is clear from the following dictionary definitions that glazed or porcelain surfaces are not necessarily, even ordinarily, opaque. Webster's New International Dictionary, 2nd Edition (1956) defines "porcelain" as "A fine ware differing from ordinary pottery in being translucent and in its superior whiteness * * *;

"enamel" as "1. A vitreous composition, usually opaque or semiopaque, applied by fusion to the surface of metal * * * for protection or ornamentation. In ceramics, such a composition, when transparent, is usually called a glaze. 2. Any glossy surface resembling enamel;"

"glaze" as "2. To incrust, cover, or overlay with a thin surface, consisting of, or resembling, glass * * *; hence, to render smooth or glossy; * * *"; and

"opaque" as "2. Not reflecting or giving out light; dark, not shining. 3. Impervious to the rays of light; not transparent."