NEWMAN, Circuit Judge,
dissenting.
The invention patented by Tokai Corporation is a utility rod lighter of the sort used to light barbeques or fireplaces, having a novel safety mechanism that achieves a new level of child-safety over the prior art. The Tokai lighter displaced previously available child-safety rod utility lighters, and received the ultimate accolade of copying by the competition.
The Tokai lighter has an ingenious safety design, whereby the device is simple to operate by adults but not by children, unlike prior art utility lighters, and locks automatically after use, unlike prior art utility lighters. The Tokai safety structure does not result from direct combination of the prior art. Nonetheless the district court, and now this court, hold on summary judgment that the asserted claims of the Tokai patents are invalid for obviousness. I must, respectfully, dissent.
I
The basic structure of a utility rod lighter is illustrated in a patent to Shike, cited by the district court as prior art to Tokaf s claimed lighter.
[[Image here]]
U.S. Patent 5,326,256 (“Shike”). Shike shows the typical extended rod for lighting the charcoal or other fuel, and a trigger (18) operated mechanism that causes a piezoelectric unit (20) to discharge voltage that ignites combustible gas released from a gas reservoir (7). Shike Patent, col 3. II. 5-15. Although Shike does not have a safety mechanism, utility rod lighters are currently required to have safety features to prevent accidental or uncontrolled ignition, particularly by children.
The typical safety features in utility lighters operate in three steps: first, the user releases a locking mechanism; then the lighter is used, generally by a trigger-initiated ignition mechanism; then the lighter is relocked. For example, the cited prior art patent to Liang shows a utility lighter with a safety mechanism that is manually controlled:
*1374 [[Image here]]
U.S. Patent 5,199,865 (“Liang”). As the district court explained, Liang teaches a utility rod lighter with a control knob safety mechanism (3) that “must be manually set to a locking position or operational position, and will not automatically return to a locking position after use.” Tokai Corp. v. Easton Enters. Inc., No. 5:07-cv-00883 (C.D.Cal. Oct. 27, 2009) (“SJ Order ”), slip op. at 20.
In contrast, Tokai’s device provides two aspects of childproof safety: first, the device is not operable by a child’s hand, and second, it locks automatically after use. The Tokai device requires an adult hand for concurrent two-finger operation, whereby the locking member is unlocked by the adult thumb while the trigger is simultaneously operated by the adult index finger; these steps must be concurrent, not sequential. After release the mechanism automatically returns to the locked position. The simplicity, the ease of operation, the child-proof effectiveness, and the safety of this design displaced the competition. The record states that Tokai has sold more than 100 million of these utility lighters in the United States; Tokai’s Vice President testified that large retailers such as Wal-Mart told him that they were purchasing Tokai’s lighters because of the improved child safety “as it relates to our mechanism versus the competition.”
Tokai asserted Claim 1 of the 5,697,775 (the “'775 patent”); Claims 1, 10 and 13 of the 5,897,308 (the “'308 patent”); and Claims 1, 3, and 4 of the 6,093,017 (the “'017 patent”), all inventions of Saito et al. On summary judgment the district court held all of the asserted claims invalid for obviousness. I cannot agree.
The Tokai '308 patent utility lighter safety feature is illustrated in the patent as follows:
*1375 [[Image here]]
U.S. Patent 5,897,308 (“Saito”). As shown by the arrow in Figure 8A, when the user’s thumb depresses the lock-releasing button (125c) of the locking member (125), the engagement section of the locking member (125b) moves from the engagement groove (120f) into the operation member or trigger (120), and the shaft (125a) slides along the vertical groove (120e) of the operation member, so that it becomes possible for the trigger to be pulled simultaneously with depression of the lock-releasing button. Id. col.16 ll.18-31. After the trigger is pulled and ignition is achieved, on release of the device the spring (26) automatically returns the locking member to the locked position whereby the trigger cannot be pulled. Id. col.16 11.31-33. Claim 10 is directed to the device and its thumb and finger operation:
10. A safety device in a lighting rod, which lighting rod is provided with a rod-like top end portion and a main body, the rod-like top end portion being provided with a jetting nozzle for jetting out a gas, the main body being provided with:
i) a gas tank,
ii) a valve mechanism for opening and closing a path, through which the gas is supplied from the gas tank to the jetting nozzle,
iii) a piezoelectric unit for generating a discharge voltage for lighting the gas, and
iv) an operation member, which is capable of sliding, which has an operating section, and which drives the valve mechanism and the piezoelectric unit in order to carry out a lighting operation, the operating section of the operating member being exposed to the exterior of the main body in a position to be capable of operational engagement by a finger of a hand holding the lighting rod,
the safety device comprising:
a) a locking element which is disposed inside the main body to be movable *1376 between a locking position where it prevents motion of the operation member in a direction to produce the lighting operation and a lock release position where it allows motion of the operation member in a direction to permit the lighting operation, and
b) an unlocking element which is exposed to the exterior of the main body at a location opposite from the operation member so as to be engagable by the thumb of the hand holding the lighting rod to move the locking element from the locking position to the unlocking position while a finger of that hand engages the operation section.
Id. col.33 1.44-col.34 1.28 (emphases added). Claim 13 adds the automatic locking limitation that the unlocking element is normally urged away from the lock release position by “urging means.” Id. col.34 ll.43-47.
The district court held all of the claims invalid for obviousness, based on the combination of the Shike utility lighter, supra, which has no safety feature, with the safety features of a cigarette lighter patent to Morris, and/or a cigarette lighter patent to Floriot. However, these features, if combined, do not produce the Saito device. The Morris cigarette lighter is as follows:
[[Image here]]
U.S. Patent 4,832,596 (“Morris”). The Morris safety feature consists of a stop member (9) with an inturned wedge portion (12) which, when in the locked position, prevents actuation of the lever (4a) which controls the opening of the lighter’s gas valve. The user grasps the lighter in such a manner that the index finger presses at (16), thereby sliding the wedge portion (12) outwardly from underneath the lever (4a), and releasing the gas valve, whereby the gas is ignited by striking the flint wheel. Id. at col.3 11.5-15. This patent was cited during examination, the PTO recognizing the differences in mechanism and operation from the Saito device.
The Floriot lighter also blocks the opening of a gas valve in a flint and wheel cigarette lighter, illustrated as follows:
*1377 [[Image here]]
[[Image here]]
U.S. Patent 5,090,893 (“Floriot”). The Floriot lighter safety mechanism has a rocking lever (15), shown at the top of Figure 9, that controls the opening of a burner valve, and a blocking lever (24, 24a), shown at the bottom of Figure 6, that blocks the operation of the rocking lever. In operating the Floriot lighter, first the blocking lever is moved to an unblocking position by the thumb, in which position the blocking lever is held by a projection. The thumb then operates the unblocked cigarette lighter using the flint wheel. These are sequential actions, and do not require two-finger coordination. The blocking lever returns to the locked position automatically after operation of the cigarette lighter. Id. col.8 ll.13-30.
The district court held that it would have been obvious to a person of ordinary skill, defined for summary judgment purposes as a person with aptitude for high school shop class, to combine the various elements of the prior art to create the Saito device. However, the Saito device is not a simple insertion of the Floriot or Morris cigarette lighter safety mechanism into a utility lighter, as in the combination *1378 of known structures exemplified in KSR International Co. v. Teleflex, Inc., 550 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). Where, as here, the features of one reference cannot be substituted into the structure of a second reference, this weighs against obviousness. See Orthopedic Equip. Co. v. United States, 702 F.2d 1005, 1013 (Fed.Cir.1983) (“The fact that features of one reference cannot be substituted into the structure of a second reference may indicate that the claims were nonobvious in view of the combined teachings of the two references.”).
Both Morris and Shike were cited in the '775 patent, and the specification of the '308 patent recognizes that “the aforesaid safety mechanisms for gas lighters cannot be directly applied to a lighting rod, which has a different structure.” '308 Patent, col.l l.52, col.2 ll.1-3. Floriot is cumulative to Morris, in offering a different safety mechanism for a cigarette lighter. “When an attacker simply goes over the same ground travelled by the PTO, part of the burden is to show that the PTO was wrong in its decision to grant the patent.” Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1360 (Fed.Cir.1984). Defendants have not met this burden.
The district court applied an incorrect standard. The determination of obviousness is not whether a person could, with full knowledge of the patented device, reproduce it from prior art or known principles. The question is whether it would have been obvious, without knowledge of the patentee’s achievement, to produce the same thing that the patentee produced. This judgment must be made without the benefit of hindsight. It is improper to take concepts from other devices and change them in light of the now-known template of the patented device, without some direction in the prior art that would render it obvious to do so.
In a crowded and competitive field such as this is stated to be, a modification that achieves a valuable improvement is of significance in view of the many entrants seeking commercial advantage. See In re Hummer, 44 CCPA 814, 241 F.2d 742, 744 (1957) (“applicant seeks a patent on only a narrow improvement. Progress is as important, however, in crowded arts as well as in those which are in the pioneer stage”). As the Hummer court recognized, incremental but unobvious improvements serve the public interest, and are included in the purpose of the patent incentive.
The obviousness determination often presents a close question, as recognized by Judge Learned Hand: “Courts never tire, or at least in earlier times they never did, of expatiating upon the freshness of insight which observes a little, but fruitful, change which had theretofore escaped detection by those engaged in the field.” Harries v. Air King Products Co., 183 F.2d 158, 162 (2d Cir.1950). Precedent guides the decision-maker to take cognizance of the response of the marketplace to the invention. See Arkie Lures, Inc. v. Gene Larew Tackle, Inc., 119 F.3d 953, 957 (Fed.Cir.1997) (“The so-called ‘secondary considerations’ provide evidence of how the patented device is viewed by the interested public: not the inventor, but persons concerned with the product in the objective arena of the marketplace.... Such aspects may be highly probative of the issue of nonobviousness.”) (citing Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538-39 (Fed.Cir.1983)). The Court reiterated in KSR that “[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.” 550 U.S. at 406, 127 S.Ct. 1727 (quoting Graham v. John Deere Co. of Kansas City, *1379 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)); see also Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d 281, 306 (Fed.Cir.1985) (“Secondary considerations may be the most pertinent, probative, and revealing evidence available to the decision maker in reaching a conclusion on the obviousness/nonobviousness issue.”).
Although the district court recognized the commercial success of the Saito utility lighter, the court declined to give it any weight, finding, on summary judgment, that there was no “nexus” between the Saito invention and its commercial success. SJ Order, slip op. at 38. The court erred in law, for “a prima facie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent.” Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392 (Fed.Cir.1988). The defendants did not dispute Tokai’s evidence that its commercial success was due to its improved child-safety mechanism. It was improper for the district court to ignore the principle stated in Demaco and then resolve this material factual aspect against Tokai on summary judgment. See Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1574 (Fed.Cir.1996) (vacating summary judgment of invalidity for obviousness, on the ground that a genuine issue of material fact existed as to whether a commercial success nexus was present).
The district court found that “copying is inarguably present here,” but stated that it gave no weight to this finding, reasoning that copying is “only equivocal evidence of non-obviousness.” SJ Order, slip op. at 39-40.[1] While it is the province of the district court to determine the weight to be given to evidence of commercial success and copying, such evidence cannot be completely ignored. See Stratoflex, 713 F.2d at 1538 (“[E]vidence rising out of the so-called ‘secondary considerations’ must always when present be considered en route to a determination of obviousness. Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not.”) (citations omitted); W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1555 (Fed.Cir.1983) (“objective evidence of nonobviousness ... should when present always be considered as an integral part of the analysis”).
Tokai’s evidence of commercial success and copying of the patented device, taken with the structural differences and the differences in operation between the prior cigarette lighter safety mechanisms and the Saito utility lighter safety mechanism, as well as the differences between the auto-locking Saito mechanism and manual locking prior utility lighters, created at least genuine issues of material fact bearing on obviousness. Summary judgment was improperly assessed by the district court, and is now incorrectly affirmed by this court. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) *1380 (on motion for summary judgment the court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts).
My colleagues depart from the law governing determination of obviousness. The disputed facts cannot be adversely found on summary judgment. The question at least requires trial.
II
Procedural error appears to have disadvantaged the patentee. The district court excluded from consideration on the summary judgment record the declaration of Mr. Kil Young Sung for failure to provide a written expert witness report. Federal Rule 26(a)(2)(B) provides that expert testimony must be accompanied by a written report “if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party’s employee regularly involve giving expert testimony.” However, a party’s employee who does not meet this Rule need not provide a written expert report. Tokai states that Mr. Sung was indeed an employee exempt from the Rule 26(a)(2)(B) report requirement, and that when the issue was raised in connection with the summary judgment proceeding, Tokai was improperly barred from showing his employee status. I must agree that this procedure was flawed.
My colleagues state that the exclusion was “harmless.” Maj. Op. at 1366. When reviewing an erroneous evidentiary ruling, the Ninth Circuit, whose procedural rules govern, begins with a presumption of prejudice. Obrey v. Johnson, 400 F.3d 691, 701 (9th Cir.2005) (“when reviewing the effect of erroneous evidentiary rulings, we will begin with a presumption of prejudice”). The Sung declaration describes the specially configured elements of the Floriot cigarette lighter, explains their operation, and explains how the Floriot safety mechanism is incompatible with the pri- or art Shike utility lighter. Mr. Sung, as a designer of both utility lighters and cigarette lighters, offered a reasoned discussion of the prior art and its combination, relevant to the issues before the district court. The district court exceeded its discretion in denying Tokai the opportunity to establish the admissibility of this evidence under Rule 26(a).
Conclusion
The district court referred to the known need for an improved safety mechanism for utility lighters, and stated that this need was a reason to modify the prior art to make Tokai’s improved lighter. To the contrary, the continuing need weighs against the obviousness of this successful device.
Nor is it reasonable to trivialize an improvement by its relative simplicity. To the contrary, the fact that this improvement eluded discovery, and that its advantages were immediately apparent to the marketplace and to the competition, weigh in favor of nonobviousness. At a minimum, summary judgment of invalidity was improperly granted. My colleagues err in sustaining that judgment.

. Despite the district court's recognition that Tokai had demonstrated copying, my colleagues find Tokai's evidence of copying "unpersuasive,” stating that copying "requires evidence of efforts to replicate a specific product.” Maj. Op. at 1370. Defendants’ internal documentation of its unsuccessful attempts to design around the Saito invention is such evidence. J.A. 1451-1457. The court improperly resolves this factual aspect against Tokai on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (on motion for summary judgment "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor”).